**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT MORESI,**<br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF PHILADELPHIA; POLICE OFFICER REIGERT PONE; CURRENTLY UNKNOWN AND UNNAMED POLICE OFFICERS,**<br>**Defendants.** | **CIVIL ACTION**<br><br>**NO. 15-38** |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff Robert Moresi brings this action under 42 U.S.C. § 1983 and state tort law. In his Amended Complaint, he claims that defendants violated his Fourth and Fourteenth Amendment rights by using excessive force and denying him medical care during and subsequent to a violent encounter between Moresi and police officer Reigert Pone, and that in so doing, they also committed assault and battery on him.

Before the Court is the Defendant City of Philadelphia's (the "City") Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The City moves to dismiss Moresi's claim against it on the ground that he has failed to sufficiently allege a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the Amended Complaint includes no viable allegations that the City supported a violation of his constitutional rights. Mot. at 2. For the reasons that follow, the City's motion will be granted.

## II. BACKGROUND

### A. *Factual History*

Robert Moresi is a Philadelphia resident who encountered an argument between some people and police officers as he walked the 2500 block of South Broad Street in Philadelphia on January 3, 2013. Am. Compl. ¶¶ 6-8. Defendant Reigert Pone, a police officer who was at the scene, focused his attention on Moresi and asked him words to the effect of "what the fuck he was looking at." *Id.* ¶ 8-10. Pone then grabbed Moresi and slammed his head into the wall causing Moresi head, torso, and knee injuries. *Id.* ¶ 11. A few currently unknown and unnamed police officers assisted Pone. *Id.* ¶ 12. After the impact, Moresi's head began swelling and he could not stand up. *Id.* ¶ 13. Then, Pone arrested Moresi and ordered him to walk. *Id.* ¶¶ 13-14. Moresi complained to Pone that he was badly hurt and unable to walk, and he requested to be taken to the hospital immediately. *Id.* ¶¶ 17-19. Pone refused his request. *Id.* ¶ 19. Moresi walked with a severe limp, which was clearly visible to Pone and other police officers. *Id.*

After transporting him to the police station, Pone made Moresi walk again and ignored his pleas for medical attention. *Id.* ¶¶ 20-22. While Moresi was in police custody, Pone and other police officers laughed and ridiculed him, because he could not walk properly and his head was grossly swollen. *Id.* ¶ 23. Moresi told Pone that he needed immediate medical care, especially for his chronically injured knee and his head, but Pone again ignored him. *Id.* ¶ 24. Neither Pone nor any of the other Defendant police officers offered Moresi any medical treatment while he was in their custody. *Id.* ¶ 26. Moresi was released from custody on the same day. *Id.* ¶ 28. He proceeded to Thomas Jefferson University Hospital-Methodist, where he was treated for injuries to his neck, head, knee, and lower back. *Id.* ¶¶ 28-29. He had a moderately sized hematoma to his right forehead and spine tenderness. *Id.* ¶ 30.

**B. *Procedural History***

Moresi filed his initial *pro se* complaint on January 12, 2015, against the City, Pone, and currently unknown and unnamed police officers of the Philadelphia Police Department claiming excessive force, deliberate indifference to the need for medical treatment, and municipal liability. Compl. ¶¶ 15, 17. On May 11, 2015, the Court granted the Defendants' Motion to Dismiss for Failure to State a Claim in which they set forth deficiencies in the pleading of Moresi's Complaint. *See* ECF No. 10. Specifically, the Court found that Moresi failed to identify a municipal policymaker and to include factual allegations regarding a municipal policy or custom. *See generally* ECF No. 7. The Court dismissed without prejudice as to all Defendants, and Plaintiff timely filed an Amended Complaint.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57 (internal quotation marks omitted)).

"In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" *Great W.*

*Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "Context matters in notice pleading," and thus "some complaints will require at least some factual allegations to make out a 'showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 232 (quoting *Twombly*, 550 U.S. at 555). Stating a claim "'requires a complaint with enough factual matter (taken as true) to suggest' the required element," calling for "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Great Western Mining*, 615 F.3d at 177 (quoting *Twombly*, 550 U.S. at 556). "In other words, 'there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation.'" *Id.* (quoting *Phillips*, 515 F.3d at 234-35). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521,__, 131 S. Ct. 1289, 1297 (2011).

Under Third Circuit precedent, determining whether a complaint meets the pleading standard involves a three-step analysis: (1) "outline the elements a plaintiff must plead to state a claim for relief"; (2) "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and (3) "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly rise to an entitlement to relief.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679) (citations omitted).

## IV. DISCUSSION

In interpreting the Plaintiff's stated claim for relief under Section 1983, the Court must apply *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which holds, "plaintiffs may not rely on a theory of respondeat superior to impose liability on municipalities." *Brown v.*

*City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is liable under § 1983." *Monell*, 436 U.S. at 694. At bottom, "tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's 'official policy.'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

There is a "two-path track" to municipal liability, depending on whether a Section 1983 claim is premised on municipal policy or a municipal custom:

> Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law.

*Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and internal quotation marks omitted). Moresi has not alleged the existence of any "official proclamation, policy or edict" issued by a final policymaker. Thus, he has failed to state a *Monell* claim based on policy. *See Estate of Tyler ex rel. Floyd v. Grossman*, — F. Supp. 3d. —, 2015 WL 3634371, at *12 (E.D. Pa. June 11, 2015). Ergo, his *Monell* claim survives this motion to dismiss only if his Amended Complaint sufficiently alleges that he was deprived of "rights, privileges, or immunities secured by the Constitution and laws," and that a municipal custom caused his injury. *Mulholland*, 706 F.3d at 238.

The Amended Complaint alleges the following "customs":

> a. Endorsing and ratifying the use of excessive and unnecessary force by police officers while they were effectuating arrests, including methods of force, which are other than those for which police officers were trained to effectuate arrests, including slamming suspects [sic] head first into the ground, onto concrete surfaces and into concrete, brick or other hard surface walls, even when those suspects were not resisting arrests;

> b. Endorsing and ratifying a practice by police officers of refusing medical treatment to suspects whom the officers have obviously seriously injured during an arrest, and even when the suspects made repeated requested immediate medical treatment;
>
> c. The failure to investigate and discipline police officers who have been alleged to have committed excessive force and/or who have been deliberately indifferent to suspect's need for medical treatment.
>
> d. Failing to sanction police officers who violate documented Philadelphia Police Department protocol and procedures regarding the proper use and methods of force to be used on suspects, and for providing medical treatment to injured suspects.

Am. Compl. ¶ 41.

Moresi's allegations simply project his specific injuries onto a municipal scale. Apart from the single incidence of alleged police misconduct against him, the Amended Complaint pleads no other facts necessary to establish a municipal liability claim. He fails to allege any facts showing that the City's failure to investigate, supervise, or discipline its police officers was a custom "so permanent and well-settled as to virtually constitute law." *Mulholland*, 706 F.3d at 237. Neither does he allege any facts to show that the City had "knowledge of, and acquiescence to" the practices he delineates. *Watson v. Abington Township*, 478 F.3d 144, 156 (3d Cir. 2007) (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)). Further, he fails to allege facts that support his claim that the above-cited conduct resulted in a pattern of similar constitutional violations, such that Philadelphia's "failure to address the deficiency amounts to a deliberate indifference to the problem." *Levine v. Rodden*, No. 15-574, 2015 WL 2151781, at *3 (E.D. Pa. May 7, 2015).

His claim rests merely on conclusory allegations—blanket assertions of the "unadorned, the-defendant-wrongfully-harmed-me accusation" type specifically disallowed in a Rule 8(a)(2) pleading under *Twombly* and *Iqbal*, and of the type the Court is required to "peel away" under Third Circuit law. *See Iqbal*, 556 U.S. at 678; *Bistrian*, 696 F.3d at 365. Federal Rule of Civil

Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief" that rises "above the speculative level." *Phillips*, 515 F.3d at 231-32 (quoting *Twombly*, 550 U.S. at 555 n.3). He offers only "bald assertions" that such customs existed "without any support that would suggest that what happened to him . . . were not idiosyncratic actions of individual public actors." *Elias v. Township of Cheltenham*, No. 14-6117, 2015 WL 356966, at *4 (E.D. Pa. Jan. 28, 2015) (citations and internal quotation marks omitted); *see also Levine*, 2015 WL 2151781, at *3 (dismissing wrongful arrest claim when the complaint included only one incident of the purported municipal custom of failing to "adequately investigate, supervise, or discipline police officers accused of committing constitutional violations"); *cf. Hall v. Raech*, No. 08-5020, 2009 WL 811503, at *5 (E.D. Pa. Mar. 25, 2009) (refusing to dismiss *Monell* claims where plaintiff identified a specific training deficiency, explained why prior events should have demonstrated to the municipality the need for training, and averred that the deficiency caused the violation of his constitutional rights). The Supreme Court has mandated that "rigorous standards of culpability and causation" must be satisfied to impose municipal liability. *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). The Plaintiff's allegations fail to meet those rigorous standards—even here at the motion to dismiss stage, with inferences drawn in his favor. Accordingly, the motion to dismiss the Section 1983 claim against the City shall be granted.

"When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Granting Moresi leave to amend in this case would be futile, as he has failed twice already to sufficiently allege a *Monell* claim. Therefore, the City's motion shall be granted with prejudice.

An Order consistent with this memorandum follows.

Dated: **July 8, 2015**

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

**WENDY BEETLESTONE, J.**